EXHIBIT J

Exhibit 6

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. 03-[redacted] |
| ONE 1991 CHEVROLET CORVETTE, and $22,522.00, MORE OR LESS, IN UNITED STATES CURRENCY | * | |
| Defendant. | * | |

**AFFIDAVIT OF KATRINA A. WARREN**

STATE OF ALABAMA )
) ss.
COUNTY OF MOBILE )

Personally appeared before me Katrina A. Warren, who being duly sworn, deposes and says:

My name is Katrina A. Warren and I am over the age of twenty-one. I have personal knowledge of the matters contained herein.

I am currently employed by the State of Alabama in the Alabama Department of Forensic Sciences ("ADFS") as a Forensic Scientist. My duties include testing evidence submitted to the ADFS for lab analysis to determine whether such evidence contain controlled substances. I have been so employed since 2000.

The education and training I received to qualify for this position include a Bachelor of Sciences Degree in Chemistry, which I received from Troy State University, Troy, Alabama, in

1999. From there, I went to work at the Florida Department of Law Enforcement ("FDLE"), Tallahassee, Florida, as a Forensic Technologist, where I assisted Crime Laboratory Analysts in their work. In 2000, I began my work with the ADFS in the Auburn, Alabama, lab as a Forensic Scientist I. I completed most of my ADFS Drug Chemistry Training Curriculum at the Auburn ADFS lab and the remainder at the Mobile lab. That curriculum consisted of classroom lectures, oral and written exams, 100% successful chemical analyses of 12 unknown substances, testing on every instrument of analysis ADFS Forensic Scientists use and additional testing on different types of controlled substances including cocaine and plant materials such as marijuana, among others. In July 2003, I successfully completed the ADFS training curriculum, and was certified by the ADFS as a Forensic Scientist II/III, in Drug Chemistry. As of my July 2003 certification, I became qualified to perform any and all analyses of substances submitted to ADFS using any and all available instruments for such analyses and to report (as a Forensic Scientist) as to the result of any such analyses I perform. I am a member of the Alabama State Association of Forensic Sciences. I have completed continuing education seminars since 2000, including one sponsored by the DEA for Forensic Chemists. I have been qualified as an expert in the field of Forensic Sciences concerning the analysis of controlled substances approximately 5 times in the Circuit Court of Mobile County, Alabama.

Before I performed forensic chemical analyses on substances submitted in this case, I had performed the same or similar analyses approximately 350 times since my July 2003 ADFS certification as a Forensic Scientist II/III. Since the beginning of my training, I had worked on over 1000 samples prior to this case. In addition, through my daily work at the Mobile lab, I

have become familiar with the standard operating procedures employed by the ADFS for the receipt and safekeeping of substances submitted for analysis.

On October 16, 2003, I received from J. Gary Wallace of ADFS the assignment of analyzing evidence submitted which Mr. Wallace had assigned ADFS case number 03MB03269. As is ADFS standard operating procedure, I used case number 03MB03269 to identify the evidence to be retrieved from the forensic scientist drug evidence vault where it had remained in the custody of J.Gary Wallace. On October 27, 2003, when I was ready to conduct my analyses, I retrieved the evidence from the vault bearing case number 03MB03269, and received same into my custody, I placed my initials and the date received on the evidence (the case number and item numbers were already on them). My analyses consisted of initially describing the evidence, putting case number, item numbers, date and initials on each piece of evidence and packaging. Exhbit J-1 is a true and correct certified copy of the Certificate of Analysis I prepared to identify the evidence I analyzed and the results of my analysis. In the "Description of Evidence" section of Exhibit J-1, I described the evidence received for analysis. The description of the evidence below by Item #s corresponds with the numbers assigned to the particular items of evidence identified under the "Description of Evidence" and "Results of Analyses" sections of Exhibit J-1.

Item #1: I analyzed each of the four plastic wrapped packages containing plant material. I first weighed each package and then proceeded with a visual and microscopic examination and a color test on a portion of each of the four samples. In laymans terms, the visual and microscopic examination of the plant material from the four packages revealed that, based on my education and training, each had visual characteristics consistent with marajuana, including leaf fragments, stems, seeds and flowering tops. I also performed a color test on a portion of each item that

showed a result consistent with marijuana. From my analyses I was able to form the opinion that each of the four packages gave a positive result for marijuana. The total weight of all four was 11795.7 grams or 416.00 ounces or 26.0 pounds.

No analyses were performed on Items #2-4 and 5A because of our department's Standard Operating Procedures guidelines for analyzing evidence.

Item #5B: I weighed this sample at 0.69 grams and then I proceeded with my analyses. I performed a color test of inquiry. In layman's terms the color test consists of taking a portion of the sample and adding a reagent to observe a color change on the sample. This gave an indication of presumptive positive for Cocaine base. I then sampled the material to get an Infrared Spectroscopy (IR) spectrum. In layman's terms, I used a Infrared Spectrophotometer to obtain the IR spectrum of the sample which provided me with the structural characteristics of the sample. I then used those characteristics and compared the spectrum to a literature source generally accepted in the field of forensic sciences and concluded that it was the same as Cocaine base. I then sampled some more of the material and put a portion of the sample in a vial where I added methanol to run on the Gas Chromatograph/Mass Spectrometer. In layman's terms, the Gas Chromatograph/Mass Spectrometer is an instrument which separates and fragments the sample placed in it and provides information concerning the structure of the sample. The results from this instrumentation were positive for Cocaine. The same was compared to a known standard of cocaine. A blank was run before the sample to insure that there was no contamination or carry-over. Based on the foregoing tests and observations and my education and training, I formed the opinion that Item 5B contained the presence of Cocaine Base.

Item #6: Sample was weighed at 9.37 grams and then I got negative results for two color tests. It only bubbled when the reagents were added. I then did an IR, as described above, that gave a spectrum similar to Sodium Bicarbonate or baking soda. The results were then marked as Negative for a controlled substance.

I then generated my data and a report was typed. After I reviewed and signed the report, all of my data and the report were reviewed by my supervisor, J.Gary Wallace.

The evidence was resealed after analyses and returned to the Drug Chemistry Vault. Item #1 was returned to A.L. Neidhardt on January 28, 2004, and Items #2-6 were returned to him on February 12, 2004.

Katrina A. Warren
Katrina A. Warren
Alabama Department of Forensic Sciences

Subscribed and sworn to before me
this 9th day of June, 2005.

Gloria W. Richardson
Notary Public
My Commission Expires: My Commission Expires 06-02-09